UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DONOVAN HOWARD PAYEUR,

                      Petitioner,                    Case No. 2:19-cv-187

v.                                          Honorable Paul L. Maloney

CONNIE HORTON,

                      Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Donovan Howard Payeur is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  On December 16, 2016, following a four-day jury trial in the Gogebic County Circuit Court, Petitioner was convicted of possession with intent to deliver methamphetamine and conspiracy to commit possession with intent to deliver methamphetamine, in violation of Mich. Comp. Laws § 333.7401(2)(b)(*i*); felon in possession of a firearm and felon in possession of ammunition, in violation of Mich. Comp. Laws § 750.224; and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.  On February 21, 2017, the trial court sentenced Petitioner to concurrent sentences of 4 years to 7 years, 6 months for each felon in possession conviction, and 9 to 30 years for each methamphetamine conviction.  Those sentences were to be served consecutively to a sentence of 2 years for felony-firearm.

On September 12, 2019, Petitioner filed his habeas corpus petition raising one ground for relief, as follows:

I.      Mr. Payeur was deprived of the right to the effective assistance of counsel when his trial attorney insisted that the prosecution present the testimony of Christine Leonzal, the only person who furnished testimony connecting Mr. Payeur to the gun seized into evidence.

(Pet., ECF No. 1, PageID.15.)  Respondent has filed an answer to the petition (ECF No. 5) stating that the petition should be denied because it lacks merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find Petitioner's ineffective assistance of counsel claim is meritless.  Accordingly, I recommend that the petition be denied.

<u>Discussion</u>

**I.      Factual allegations**

The issue Petitioner raises in this Court, and that he raised in the state appellate courts, focused on the testimony of one witness, Christine Leonzal.  The Michigan Court of Appeals' summary of the facts underlying Petitioner's conviction, therefore, is likewise focused on the testimony of Ms. Leonzal:

The police stopped a vehicle being driven by James Engles in which Christine Leonzal was a passenger.  Leonzal testified that she had been smoking methamphetamine with Engles and defendant beforehand.  Engles testified that defendant had sold him approximately half of a gram of methamphetamine and that defendant took the drug from a box in the garage.  Leonzal averred that Engles was a thief and drug abuser.  She initially told police that defendant possessed guns and drugs at his home.  Her information was used to get a search warrant for defendant's residence.

Before the warrant was executed, defendant was stopped by police when he ran a stop sign.  There was ammunition in his car and marijuana was found during a consensual search of his person.  During a subsequent search of defendant's home, police found, among other items, methamphetamine, a firearm and more ammunition, and the box in the garage from which defendant had taken methamphetamine to sell to Engles.

At trial, Leonzal testified that she came to Michigan with Engles to return a car to defendant.  She stated that prior to her arrest, she attempted to leave defendant's home after consuming methamphetamine, but her vehicle stalled on the road, and defendant picked her up and they returned to his home.  Leonzal stated that eventually she felt she was being held "as collateral against [her] will" in defendant's home, and that defendant was carrying a Tech-9 in his home during this period in a threatening manner.  She stated that defendant was "really mad, very, very mad . . . and . . . told me that I was not leaving or going home until [Engles] came back."  Leonzal testified that when she was arrested, she initially did not tell police officers that she saw a gun at defendant's home, but only "heard" about defendant possessing it, because she feared that the expression "snitches . . . end up in ditches" would come true.

(Mich. Ct. App. Op., ECF No. 6-18, PageID.1303–04.)  Leonzal played a pivotal role in the

investigation of Petitioner's crimes in that her report to police was used to secure a search warrant.

Review of the entire trial record, however, reveals that Leonzal's testimony at trial was cumulative

of testimony from other witnesses. The court of appeals reached the same conclusion:

Leonzal was just one witness amongst many who tied defendant to the methamphetamine and Tech-9 in his home.  Engles, defendant's wife, and the individual who was with defendant when he was arrested all testified that the gun belonged to defendant.  They also testified that defendant used and sold methamphetamine.  Numerous police officials testified as to the drugs, Tech-9, and ammunition found at defendant's home and in his vehicle.  Moreover, an officer who interviewed defendant after his arrest testified that defendant told him he possessed a gun at his home.  Moreover, defendant gave this officer a key to the lockbox where police found methamphetamine.

(*Id.*, PageID.1305.)[1]  After hearing testimony for two and one-half days, the jurors deliberated for

about an hour before finding Petitioner guilty of the charges outlined above.

Petitioner's focus on the testimony of Leonzal is based on counsel's pretrial

insistence that the prosecutor produce her for trial.  Immediately prior to trial, the prosecutor

moved to strike several witnesses from the witness list.  The significance of that request follows

from the prosecutor's obligation with regard to *res gestae* witnesses.  Prior to 1986, Michigan

---

[1] The court of appeals' conclusion that Leonzal's testimony was not essential to Petitioner's prosecution is bolstered by the fact that her testimony was not part of the evidence offered by the prosecutor at Petitioner's preliminary examination.  (Prelim. Exam. Tr. I & II, ECF Nos. 6-7, 6-8.)

prosecutor's had a duty to produce *res gestae* witnesses.  That duty was a product of the English courts:

> The prosecutor in a criminal case, is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which makes against the defendant, and then, to put the defendant to the proof of the other part, so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed; especially, if it appears to the court that the evidence of the other portion is attainable.  The only legitimate object of the prosecution is, "to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence."  The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent.  His object like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success.  And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community.  And, according to the well-established rules of the English courts, all the witnesses present at the transaction, should be called by the prosecution, before the prisoner is put to his defense, if such witnesses be present, or clearly attainable.  See *Maher v. The People*, 10 Mich., 225, 226.  The English rule goes so far as to require the prosecutor to produce all present at the transaction, though they may be the near relatives of the prisoner.  See *Chapman's case*, 8 C. & P., 559; *Orchard's case*, *Id*., note *Roscoe's Cr. Ev*., 164.

*Hurd v. People*, 25 Mich. 405, 416, 1872 WL 3237 (Mich. Oct. 8, 1872).  The principle made its way into Michigan statutes by way of a requirement that the indictment—and eventually the information—include a list of witnesses endorsed by the prosecutor.  *See People v. Pearson*, 273 N.W.2d 856, 866 (Mich. 1979) ("The rule took legislative form in 1859; the statute now provides: [statutory language].   The relevant language has remained unchanged since first enacted.") (footnotes omitted).   The Michigan courts construed the statutory language "to require the prosecutor to indorse on the information, ***produce in court, and call all known res gestae witnesses***." *Id*. (footnote omitted, emphasis added).

In 1986, the Michigan Legislature eliminated the requirement that the prosecutor endorse all *res gestae* witnesses and the requirement that the prosecutor produce all endorsed witnesses.  *People v. Koonce*, 648 N.W.2d 153, 156 (Mich. 2002); *People v. Perez*, 670 N.W.2d

655, 657–58 (Mich. 2003).  The statutory amendment "replaced the prosecutor's duty to produce *res gestae* witnesses with 'an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request.'"  *Perez*, at 657–58.

Before the statutory amendment, because the prosecutor had a duty to produce all *res gestae* witnesses, where the prosecutor failed to produce a witness the defendant was entitled to a "missing witness" instruction that permitted the jurors to infer that the missing witness's testimony would have been unfavorable to the prosecution's case.  *Perez*, at 656–58.  When the obligation to produce witnesses was eliminated, the foundation of the instruction was called into question.  The *Perez* court identified certain circumstances where the instruction might still be warranted, including "if a prosecutor fails to secure the presence at trial of a listed witness who has not been properly excused."  *Perez*, at 658.

When the prosecutor sought to eliminate witnesses from the witness list, she was foreclosing the argument that the prosecutor was still obligated to secure the presence of those witnesses for trial.  When defense counsel stipulated to the removal of all of the witnesses except Leonzal, counsel was giving up the possibility of the "missing witness" instruction for those witnesses.  Having been removed from the prosecutor's witness list, the removed witnesses were properly excused.  In not agreeing to the removal of Leonzal, defense counsel may have been attempting to ensure Leonzal's actual presence at trial or he may have been simply refusing to yield the possibility that the "missing witness" instruction might be available if the prosecutor was unable to produce her.  Leonzal was from out of state.  Indeed, the trial court specifically noted that Petitioner could be entitled to the "missing witness" instruction.  (Mot. Hr'g Tr., ECF No. 6-12, PageID.429.)

Petitioner presented the same argument in the Michigan Court of Appeals that he raises in this Court: counsel was ineffective because "he insisted that the prosecution present the testimony of Christine Leonzal . . . ." (Pet'r's Appeal Br., ECF No. 6-18, PageID.1351.) The court of appeals rejected Petitioner's argument and affirmed the trial court in an unpublished opinion issued August 16, 2018. (Mich. Ct. App. Op., ECF No. 6-18, PageID.1303–1308.) The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal to that court raising the same issue. (Pet'r's Appl. for Leave to Appeal, ECF No. 6-19, PageID.1439; Mich. Order, ECF No. 6-19, PageID.1437.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

6

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381–82; *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

### III.    Ineffective assistance of trial counsel

Petitioner contends that his counsel rendered constitutionally ineffective assistance when he "insisted that the prosecution present the testimony of Christine Leonzal, the only person who furnished testimony connecting Mr. Payeur to the gun seized into evidence."  (Pet., ECF No. 1, PageID.15.)  At the outset, the undersigned notes that two of the premises of Petitioner's complaint are demonstrably false.

First, there is nothing in the record to support Petitioner's assertion that his counsel insisted that the prosecution present the testimony of Christine Leonzal.  Counsel refused to stipulate that Leonzal could be removed from the witness list, but that does not mean that counsel insisted that the prosecutor present her testimony.  At most it meant that the prosecutor had some obligation to make her available at trial or suffer the consequences of the "missing witness" instruction if she were absent.  As set forth fully below, the defense could not, and did not, insist that the prosecutor call Leonzal as a witness.

Second, Leonzal was not the only person who furnished testimony connecting Petitioner to the gun seized into evidence.  The court of appeals' determination that several witnesses testified that the gun was Petitioner's is well-grounded in the record.  That factual determination is presumed to be correct.  Petitioner could rebut that presumption with clear and convincing evidence.  He does not even make the attempt.  In fact, he does not respond to the court of appeals' determination at all.[2]

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a

---

[2] Before the court of appeals issued its decision, Petitioner argued that the other witnesses who connected him to the gun were not as damaging as Leonzal (see Pet'r's Appeal Br., ECF No. 6-18, PageID.1365–1366; Pet'r's Remand Br., ECF No. 6-18, PageID.1394–1395), but he has never argued that the court of appeals' determination is not well-grounded in the record nor has he offered clear and convincing evidence to contradict the determination.

claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals applied the following standard to resolve Petitioner's ineffective assistance of counsel claim:

> "Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense. Const 1963, art 1, § 20; US Const, Am VI." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). That means the defendant is entitled to effective assistance. *People v Stratton*, 148 Mich App 70, 78; 384 NW2d 83 (1985). Effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *Premo v Moore*, 562 US 115, 121; 131 S Ct 733; 178 L Ed 2d 649 (2011); *see also People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, *Trakhtenberg*, 493 Mich at 51; *Strickland v Washington*, 466 US 668, 691-692; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (trial counsel's performance must be measured against an objective standard of reasonableness and without the benefit of hindsight); *People v Payne*, 285 Mich App 181, 188, 190; 774 NW2d 714 (2009). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *Payne*, 285 Mich App at 190.

(Mich. Ct. App. Op., ECF No. 6-18, PageID.1304.)  Thus, the state appellate court expressly relied on clearly established federal law when rejecting Petitioner's ineffective assistance of counsel claim.

Moreover, the appellate court's application of *Strickland* was eminently reasonable. The court of appeals, apparently attempting to make sense of an argument constructed on two faulty premises, recast that argument as three different ineffective assistance of counsel claims.

### A.    Counsel was ineffective for insisting that Leonzal be made available

The court first recast Petitioner's ineffective assistance argument as a claim that "counsel was ineffective for insisting that Leonzal **be made available to testify at trial**." (*Id*., PageID.1304.)  The court of appeals then concluded that such an argument failed under both *Strickland* prongs.  First, with regard to the professional reasonableness of counsel "insistence" the court reasoned:

> Even if defense counsel insisted that Leonzal be made available for trial and then did not call her as a witness for the defense, defendant does not sufficiently articulate why insisting that Leonzal be made available to testify was an objectively unreasonable decision.  Defendant states that "but for counsel's insistence, the jury would never have heard from . . . Leonzal, whose testimony was very harmful to [defendant]."
>
> Defendant's argument fails in part because defense counsel could have legitimately asked for Leonzal's availability at trial and not called her to testify for the defense.  Once the prosecution called her as a witness, counsel may not have needed to call her since he was able to cross-examine rather than directly examine her.  Counsel may have made a strategic decision that it was necessary to undermine her credibility and elicit negative information about other prosecution witnesses through Leonzal.  An officer had testified that when Leonzal was arrested, she made comments about being held captive by defendant.  Counsel was aware of this evidence, as well as the weight of the evidence against defendant and of the multiple witnesses providing testimony about the gun and methamphetamine he possessed, and may have made a reasonable calculation that Leonzal's testimony, even if harmful in part to defendant, could be helpful in undermining her own credibility and that of others.  Leonzal testified that she initially lied to police when they interviewed her after her arrest.  This fact could have left the jury with a sense that Leonzal's statement to the officer and subsequent testimony about being held against her will in defendant's garage, and her observations that defendant sold

methamphetamine and possessed a gun, were untrue.  Leonzal also stated that Engles, an important prosecution witness who detailed the fact that defendant was in the drug business, was a thief and abused drugs.  This testimony could have undermined Engles's credibility in the minds of the jury.  Trying to ensure Leonzal's presence so as to elicit these compromising details could have been a reasonable tactic by defense counsel.  The aforementioned details would only have been presented to the jury if Leonzal was made available for trial.

(*Id.*, PageID.1305.)

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

In *Harrington*, the issue was whether counsel could have reasonably decided to **not** consult a blood expert.  The *Harrington* court did not evaluate counsel's decision based on the reasons offered by counsel.  Indeed, it does not appear that there was ever a hearing that disclosed counsel's motivation for his decision.  Instead, the *Harrington* court considered the reasonableness of the decision in the abstract.  That approach necessarily follows from *Strickland*'s requirement that, to overcome the presumption of regularity, the defendant must show that the challenged action **cannot** be considered sound trial strategy.  If the reviewing court can conceive of a sound strategy that includes the challenged action, the matter is resolved.

*Harrington* reversed a Ninth Circuit *en banc* decision.  The *Harrington* court criticized the Ninth Circuit for limiting its inquiry to counsel's actual thinking:

The Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking.  Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins, supra*, at 526–527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.

12

> There is a "strong presumption" that counsel's attention to certain issues to the
> exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v.*
> *Gentry*, 540 U.S. 1, 8 (2003) (per curiam).  After an adverse verdict at trial even
> the most experienced counsel may find it difficult to resist asking whether a
> different strategy might have been better, and, in the course of that reflection, to
> magnify their own responsibility for an unfavorable outcome.  *Strickland*, however,
> calls for an inquiry into the objective reasonableness of counsel's performance, not
> counsel's subjective state of mind.  466 U.S., at 688.

*Harrington*, 562 U.S. at 109–10.  Under that reasoning, unless Petitioner shows the Michigan

Court of Appeals that its proposed strategic reason for the challenged action was, in fact, not the

reason for counsel's action, the habeas court does not need to inquire any further into counsel's

actual reason for his or her action (or inaction).

In Petitioner's case, this Court need not determine counsel's actual reason for

"insisting that Leonzal be made available to testify" to resolve the ineffective assistance claim.  If

there is a reasonable argument to support counsel's decision, Petitioner's claim fails on the first

*Strickland* prong.  The court of appeals identified such an argument here—the "harmful" testimony

from Leonzal suffered from some inherent credibility problems because her story changed

significantly over time, plus it was essentially cumulative, and counsel might have reasonably

determined that any harm was outweighed by the benefit of undermining Engles's credibility.  That

reasonable argument is all that is required to defeat Petitioner's claim on habeas review.

The court of appeals went on to the second *Strickland* prong.  Because Leonzal's

testimony regarding Petitioner's tie to the gun was cumulative, "it [was] not reasonably probable

that, but for Leonzal's testimony, the result of his trial would have been different."  (Mich. Ct.

App. Op., ECF No. 1-18, PageID.1305–1306.)  That determination was also reasonable, and

Petitioner has failed to overcome the presumption of correctness that attaches to the court of

appeals' recitation of all of the record testimony that connected Petitioner to the gun.  Thus, on

both prongs of the *Strickland* analysis, the appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.

**B.**      **Counsel was ineffective because the prosecution called Leonzal to testify**

The court of appeals' second recasting of Petitioner's argument is directed at the heart of Petitioner's first faulty premise:  the leap from the fact that counsel insisted that Leonzal be made available at trial to the conclusion that counsel is responsible for the prosecutor calling Leonzal to testify at trial.  The court explained:

> Defendant next argues, illogically, that defense counsel was ineffective for the prosecution's choice to call Leonzal as a witness.  It is unclear how defense counsel can be said to have made an objectively unreasonable decision when the prosecution was actually responsible for the decision defendant takes issue with on appeal, calling Leonzal to testify.  Indeed, choosing and deciding whether and which witnesses should be called, and presenting evidence to a jury that may augment a witness's or witnesses' testimony, is inherent in the role and function of a prosecutor.  In defendant's criminal case, the prosecutor was tasked with proving defendant's alleged crimes beyond a reasonable doubt.  A foundational aspect of Michigan's justice system is the idea that the prosecutor carries a unique responsibility to call witnesses and present facts and circumstances to convince a jury that a defendant must be convicted of the crime or crimes with which he is charged.  See, e.g., *People v Couglin*, 65 Mich 704, 705; 32 NW 905 (1887).  That defendant takes issue with the prosecution's decision to call a witness whose testimony substantiated charges against him does not mean that his counsel made an objectively unreasonable decision at trial.  Moreover, defendant has not provided this Court with any legal authority that substantiates his contention that counsel can be ineffective for the prosecutor's decision to call a witness to testify at trial.  It is not this Court's task to construct an argument for defendant or search for authority favorable to defendant's position.  *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 425; 576 NW2d 667 (1998).

> Defendant's claim also fails because he has not provided this Court with a factual basis to link defense counsel's alleged insistence on having the prosecution call Leonzal to testify with the prosecution's actual decision to call Leonzal to testify at trial.  He has pointed to no facts apparent from the record that could substantiate his claim that defense counsel's insistence was the reason the prosecutor decided to call Leonzal to the stand.

(Mich. Ct. App. Op., ECF No. 6-18, PageID.1306.)

Certainly, defense counsel did not call Leonzal to testify and could not insist that the prosecutor call her to testify; yet it is hard to ignore that if counsel had just permitted the prosecutor to withdraw Leonzal's name from the witness list, she would not have testified.  But for the reasons set forth above, counsel could reasonably have concluded that, on balance, Leonzal's testimony favored Petitioner.  Therefore, Petitioner cannot show that counsel was professionally unreasonable in his decision.  Moreover, because Leonzal's testimony favored Petitioner in certain respects and was cumulative when it disfavored him, Petitioner cannot show that, but for Leonzal's testimony, the outcome would have been different.  Thus, the court of appeals' determinations rejecting this recasting of Petitioner's argument is neither contrary to, nor an unreasonable application of, *Strickland*.

### C.    Counsel failed to object to, or move to suppress, Leonzal's testimony

Petitioner's argument that Leonzal's testimony was somehow objectionable is based on Petitioner's assertion that her testimony regarding being held in Petitioner's garage against her will while Petitioner brandished a gun was unfairly prejudicial "other bad acts" evidence prohibited by Michigan Rule of Evidence 404(b)(1).  The court of appeals rejected that assertion because it was literally nothing more than an assertion:  "[Petitioner] has merely stated that Leonzal's testimony constituted evidence prohibited by MRE 404(b)(1).  He does not illuminate why her testimony is foreclosed by the rules of evidence . . . ."  (Mich. Ct. App. Op., ECF No. 6-18, PageID.1308.)

Petitioner correctly observes that he was not charged with kidnapping or unlawful imprisonment of Leonzal and that his possession of the gun in her presence was not the "possession" of the gun upon which his felon-in-possession or felony-firearm claims were based. That observation, however, does not render what Petitioner did to Leonzal irrelevant.

15

As the Michigan Supreme Court made clear in *People v. Jackson*, 869 N.W.2d 253

(Mich. 2015):

> [B]y its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts "other" than the "conduct at issue in the case" that risks an impermissible character-to-conduct inference. Correspondingly, acts comprised by or directly evidencing the "conduct at issue" are not subject to scrutiny under MRE 404(b). . . . Other jurisdictions are in accord with this understanding, aptly explaining that evidence of acts other than the charged conduct is "intrinsic" to that conduct and thus not subject to 404(b) scrutiny if the uncharged acts "directly prove[] the charged offense" or if they "were performed contemporaneously with" the charged offense and facilitated [its] commission."

*Jackson*, 869 N.W.2d 253, 262–63 (citations omitted).[3]  Petitioner's interaction with Leonzal was part and parcel of his interaction with co-conspirator Engles during the relatively brief time Leonzal and Engles were in contact with Petitioner.  Distribution of methamphetamine occurred before the incident with Leonzal, after the incident with Leonzal, and because of the incident with Leonzal.  Moreover, it was Leonzal's report of the incident that prompted police to obtain the search warrant for Leonzal's home.  It is not possible to excise out the incident between Leonzal and Petitioner from the crimes for which Petitioner was charged and still provide a meaningful

---

[3] *See also People v. Levack*, No. 339663, 2019 WL 1370682, at *3 (Mich. Ct. App. Mar. 26, 2019) ("In this case, the evidence of the police surveillance and apparent transaction at the restaurant was intrinsically related to the eventual stop of Levack's vehicle.  The earlier events were logically relevant to explain why Levack became a focus of a police investigation and why the police wanted to conduct a traffic stop.  It also helped explain the scope of the police conduct and inquiries after Levack was pulled over, which went beyond a typical stop for a traffic violation.  Moreover, the evidence was logically relevant to explain Levack's nervous behavior after he was stopped.  Because the evidence of the activities and Levack's conduct at the restaurant was logically relevant to the "conduct at issue in the case," it did not constitute "other" acts evidence within the meaning of MRE 404(b)(1)."); *People v. Jones*, No. 324512, 2016 WL 4129097, at *3 (Mich. Ct. App. Aug. 2, 2016) ("[W]e conclude that Bell's testimony is not subject to scrutiny under MRE 404(b)(1).  Although Bell's testimony involves evidence of a crime, wrong, or act (i.e., defendant's purchase of drugs and repayment of a drug debt), the evidence involved conduct contemporaneous to the charged offense that was offered to directly prove the offense.  The prosecutor's theory at trial was that defendant robbed the decedent to obtain money to purchase drugs.  The evidence showed that shortly after the decedent was robbed and killed, defendant purchased drugs from Bell and repaid a drug debt.  That evidence was offered for its logical relevance in directly proving defendant's connection to the charged offense; it did not rely on an improper character-to-conduct inference.  Accordingly, Bell's testimony was not subject to scrutiny under MRE 404(b)(1), and considering its relevance to the issues at trial, its introduction was not plain error.").

16

description of what happened.  The incident between Petitioner and Leonzal was simply not an "other" bad act under the *Jackson* definition.

Undoubtedly, for that reason, the Michigan Court of Appeals stated that it was not clear how "[Leonzal's] testimony is foreclosed by the rules of evidence . . . ."  (Mich. Ct. App. Op., ECF No. 6-18, PageID.1308.)  Likewise, the court could not fathom how "defense counsel's choice to abstain from objecting to [the] admission [of Leonzal's testimony under Rule 404(b)] at trial was objectively unreasonable."  (*Id.*)   And, even if the testimony were properly excluded, the court of appeals concluded the absence of prejudice still barred any ineffective assistance claim based on counsel's failure to object:

> [D]efendant admitted to an officer that he possessed a gun and provided the key to the lockbox where the drugs were found.  Given this and other testimony, it is not reasonably probable that, but for Leonzal's testimony, the outcome would have been different.

(*Id.*)  The court of appeals' application of *Strickland* to resolve Petitioner's ineffective assistance of counsel claims was patently reasonable.  Petitioner is not entitled to habeas relief on his claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:   April 2, 2021                          /s/ *Maarten Vermaat*
                                                Maarten Vermaat
                                                United States Magistrate Judge

18

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).